FILED
IN CLERK'S OFFICE

2002 JUL -2 A 11: 03

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No.:__________

U.S. DISTRICT COURT
DISTRICT OF MASS.
RECEIPT # 304928
AMOUNT $ 150.00
SUMMONS ISS. Y
LOCAL RULE 4.1
WAIVER OF SERV.
MCF ISSUED
AO 120 OR 121
BY DPTY CLK MBL
DATE 7/2/02

ELISABETH ANN MILLER, )
Plaintiff )
v. ) 02-30109-MAP
) COMPLAINT
NORTH ADAMS PUBLIC SCHOOLS, )
Defendant )

The plaintiff seeks compensation pursuant to 20 U.S.C. §1415(e)(4)(B) and pertinent state law for reasonable attorney's fees and costs associated with the prosecution of a Special Education Appeal to the Massachusetts Bureau of Special Education Appeals.

## PARTIES

1. Plaintiff, Elisabeth Ann Miller ("Parent") is an individual residing at 25 Laurel Avenue, North Adams, Massachusetts and is the mother of Monica Miller, a minor ("Monica").

2. Defendant, North Adams Public Schools ("North Adams") is a public school system in Berkshire County, Commonwealth of Massachusetts, with a business address at 191 East Main Street, Suite 1, North Adams, MA 01247-4496.

## FACTS

3. Monica is a minor child, who suffers from bipolar disorder and is disabled within the meaning of 20 U.S.C. §1401(a)(1) and therefore is eligible to receive a free and appropriate education in the least restrictive environment from North Adams.

4. In the past North Adams provided special education services to Monica pursuant to an Individualized Educational Plan (IEP).

5. A dispute arose between the parties concerning Monica's placement in the early winter of 2001. Parent sought to have Monica placed at the Pine Cobble School in Williamstown and North Adams refused.

6. On December 11, 2001, Parent retained counsel and on or about January 8, 2002, counsel filed a request for a due process hearing with the Massachusetts Bureau of Special Education Appeals ("BSEA"), seeking several remedies, including but not limited to Parent's reimbursement for unilateral placement of Monica at Pine Cobble School, a private school in Williamstown, Massachusetts.

DOCKETED

1

7. On April 9 and 11, 2002, a hearing was conducted before Lindsay Byrne, Hearing Officer of the BSEA.

8. On May 28, 2002, the BSEA issued a decision pursuant to G.L. c. 71B and 30A, 20 U.S.C. §1401 et seq., 29 U.S.C. §794 and the regulations promulgated thereunder. A copy of the decision is attached hereto and incorporated herein by reference as Exhibit 1.

9. The decision ordered North Adams to: reimburse Parent all expenses of Pine Cobble for the current school year; arrange for an appropriate summer learning program as compensatory services for its failure to adhere to the procedural requirements of G.L. c. 71B and 20 U.S.C. §1401 et seq.; convene a team meeting prior to the end of the school year to develop an IEP to reflect the decision; and, "[e]xplore with the Department of Education available mechanisms for public funding of private schools as 'sole source' options."

10. Parent was the prevailing party in all respects in the appeal to the BSEA, and North Adams has not appealed.

11. On June 5, 2002, Parent's counsel wrote to North Adams requesting payment of fees and costs associated with the prosecution of the BSEA appeal totaling $11,253.05, and furnishing copies of all Parent's counsel's billing statements, which included detailed description of the nature of services, dates of services, time expended, and charges for services. A copy of that correspondence with enclosures is attached hereto and incorporated herein by reference as Exhibit 2.

12. On June 18, 2002, Parent's counsel wrote to North Adams again asking for payment and stating that the fee had increased by $150 since the prior correspondence, and stating:

> This week, I will begin to prepare the papers for [suit in U.S. District Court] unless the City immediately agrees in writing to the following: (1) pay the full bill plus additional fees incurred until the matter is concluded and (2) an acceptable date certain by which the bill will be paid. (A copy of that correspondence is attached hereto and incorporated herein by reference as Exhibit 3.)

13. On June 27, 2002, Parent's counsel forwarded North Adams a draft copy of this complaint, stating that suit would be filed during the week of July 1, 2002, unless the amount and date of payment could be agreed to prior thereto. A copy of that correspondence is attached hereto and incorporated herein by reference as Exhibit 4.

14. To date North Adams has failed to make any payment.

15. Since Parent's counsel's letter of June 5 seeking payment of $11,253.05, Parent has incurred additional fees through June 28 of $645, for a total amount due of $11,898.05. Copies of itemized statements dated June 19 and July 1, 2002 are attached hereto and incorporated by reference as Exhibit 5.

16. Pursuant to 20 U.S.C. §1415(e)(4)(B), the Parent is entitled to reasonable attorneys fees, if she prevails in the proceedings.

17. The Parent is the prevailing party because she achieved all significant demands and benefits that she sought in requesting the BSEA hearing.

18. Since attorney's fees may be awarded for work performed in any action or proceeding, including administrative proceedings, the Parent is entitled to compensation for all attorney's fees relating to Monica's case with North Adams.

WHEREFORE, the Parent respectfully requests that the court grant judgment against the defendant North Adams Public Schools and award the following relief:

a. Parent's reasonable attorney's fees and costs for pursuing administrative action;

b. Reasonable attorney's fees and costs for bringing this action;

c. Such other and further relief as the Court may deem appropriate.

Respectfully submitted,

ELISABETH ANN MILLER
Plaintiff

By: [signature]
David W. Murphy, Jr.
Her Attorney
KATZ, MURPHY & GREENWALD
A Professional Corporation
29 Wendell Avenue
Pittsfield, MA 01201-6300
(413) 443-5957
BBO #541750

Date: 7/1/02

DWM:sz:P:\MILLER\SPED\COMPLNT.FEE

# COMMONWEALTH OF MASSACHUSETTS

***Bureau of Special Education Appeals***

In Re: North Adams Public Schools BSEA#02-2554

## DECISION

This decision is issued pursuant to M.G.L. c. 71B and 30A, 20 U.S.C. § 1401 et seq., 29 U.S.C. § 794 and the regulations promulgated thereunder. A hearing was held on the above-entitled matter on April 9 and 11, 2002, at the Springfield, MA., Offices of Catuogno Court Reporting Services. Present for all or part of the proceeding were:

| | |
|---|---|
| | Parent |
| Mary Rowland | Family Advocate |
| John Merselis | Director of Admissions, Pine Cobble School |
| John Howland | Psychiatrist |
| Dan Collyer | Coordinator of Pupil Services, North Adams |
| James Montepare | Superintendent, North Adams |
| Donald Delmolino | Counselor, Adams-Chesire Regional School District |
| David Murphy | Lawyer for Student |
| Timothy Morey | Lawyer for North Adams |
| Lindsay Byrne | Hearing Officer-BSEA |

The official record of the hearing consists of: documents submitted by the Parent marked P-1 through P-13; documents submitted by North Adams marked S-1 through S-3; and approximately 8 hours of recorded oral testimony and argument. The parties, through counsel, waived closing arguments on May 2, 2002, and the record closed on that date.

### Summary of the Facts

The pertinent facts are not in dispute and may be briefly summarized:

1. The Student is a twelve year old seventh grader. In the Spring of 2001, during her sixth grade year at Conte Middle School in North Adams, the Student began to experience significant psychological distress, including suicidal ideation. The Student was unable to focus on schoolwork or

EXHIBIT 1

homework due to her feelings of anxiety, paranoia, and inadequacy. The Parent requested a special education evaluation in June, 2001. (Parent)

2. Throughout the Fall, 2001, the Student had substantial difficulty attending the 7th grade at Conte Middle School. The special education director, Mr. Collyer, and the Parent, arranged modifications and supplements to the regular program to support the Student's attendance, including: assigning the Student to one responsible adult; tutoring in school; a peer companion; staying in a single classroom rather than multiple transitions; and a flexible schedule. Nonetheless the Student was unable to go to or stay in school due to her own fears and preoccupations. She attended only 8 days of school during the Fall 2002 semester. (Parent; Collyer)

3. Jacqueline Stores, Ph.d., conducted a comprehensive psychoeducational evaluation of the Student in September and October, 2001, on behalf of the North Adams Public Schools. She found the Student to have both a learning disability and an emotional disability. To address the Student's learning disability in the area of written expression/dysgraphia, Dr. Stores recommended the use of a scribe for note taking and test taking, a word processor, and direct remediation in the writing process. To address the Student's emotional disability, Dr. Stores recommended placement in a new school with small classes and a small student body that would minimize her contact with older and/or behaviorally disordered students. Dr. Stores noted that everyday stresses, particularly social stressors, triggered overwhelming, uncontrollable reactions for this Student that precipitated dangerous behaviors and departures from reality. (P-1) No other evaluations were conducted by the School. (Collyer)

4. In November, 2001, the Student experienced visual and auditory hallucinations and became increasingly difficult to manage. On November 3, 2001, the Student was hospitalized at the Child Stabilization Unit at Berkshire Medical Center. She was transferred to the secure latency age unit at Fransciscan Children's Hospital where she remained until November 20, 2001. The Student's treating psychiatrist at Fransciscan wrote that the Student had been diagnosed with Childhood Onset Bipolar Disorder and Attention Deficit Hyperactivity Disorder. He recommended that she be placed in a new school with a small student body and small class sizes, with little exposure to behaviorally disordered students, in order to promote her psychological health and ability to focus on learning. (P-2, 3; see also P-4)

5. John Howland, M.D., has been the Student's treating psychiatrist since the Spring, 2001. He explained that the diagnosis of bipolar illness manifests in this Student, as a severe cluster of symptoms including; anxiety; worry; fragility; lability; immaturity; aggression; suicidality; and visual/auditory hallucinations. He testified that the illness makes it difficult for the Student to attend, and to maintain focus. Because the mechanism for filtering,

prioritizing, and modulating environmental stimuli is awry, trivial stimulus often precipitates significant reactions that are clearly out of proportion in the estimation of a reasonable person. The Student, for example, reacts to noise, movement and crowds with unremitting anxiety and uncontrollable mood shifts. Her illness prevents appropriate discrimination between real and perceived threats. Her reaction is the same to either. That reaction demands her complete attention and prevents learning.

Dr. Howland testified that, due to her psychological immaturity and impending adolescence, psychotherapy is of little benefit at this time in managing the Student's illness. Instead, medication management and an appropriate environment are the most significant aspects of her treatment. Dr. Howland stated that the setting, location, and size of school are therapeutic elements for the Student. She needs a small class in a small student body to minimize social and environmental stress. An appropriate educational placement would provide the Student with a controlled environment, consistency and stability of people, place and expectations. (Howland; P-11)

6. The Team first met on November 19, 2001. The Team determined that the Student met the special education eligibility standards. The Team considered whether to return the Student to Conte Middle School, or to place her at CTP (an alternate school titled Community Treatment Program). The Parent thereafter observed CTP but found it to be inappropriate because the student body was mostly older males with behavioral issues and it offered only a half-day academic program. (Parent; Collyer) Dr. Stores had previously considered the CTP program as a placement for this Student, but had rejected it for the same reasons. (see P-1)

7. The Team reconvened on November 26, 2001. The Team decided that neither CTP nor Conte Middle School would be appropriate for the Student. Mr. Collyer, the special education director, suggested enrollment in either the Florida or Clarksburg Elementary Schools. Both schools are located in rural communities adjacent to North Adams. Both have small, self-contained grade level classes within a small elementary age student body. The Parent agreed that either school could be appropriate. The Team was rescheduled for December 4, 2001, to consider the Student's application to both school districts. (Parent, Collyer)

8. On December 3, 2001, the Student began receiving one hour daily home tutoring services. (Collyer, Parent)

9. On December 4, 2001, Mr. Collyer telephoned the Parent to cancel the Team meeting and to relay the unwelcome news that neither Florida nor Clarksburg would accept the Student due to limited space and existing peer issues. He suggested looking at Poet Seat, a temporary placement for students with

significant emotional and behavioral disabilities located over one hour away in Greenfield. (Collyer, Parent)

10. Mr. Collyer testified that he explored all possible educational options for the Student in November and December, 2001. After he had exhausted all the available alternative for small schools he turned to the Adams Memorial Middle School. He stated that Adams Memorial was a large public middle school in neighboring Adams, MA. It has a 432 student population similar to that in the Conte Middle School. Mr. Collyer informed the parent that North Adams would propose the Adams Memorial Middle School as the Student's placement and rescheduled the Team meeting for December 14, 2001.. (Collyer)

11. The December 14, 2001, Team included four teachers and the counselor from Adams Memorial. Other than the Parent, none of the Team members had met the Student. Mr. Collyer recalled that the Adams teachers expressed reservations about serving the Student, but stated that he would expect them to "step up" once she arrived in their classrooms. The Team discussed some modifications to the middle school program that might increase the chances for the Student to experience success. Among these were: sending an individual aide with the Student at all times, permitting early or late passing time between classrooms to avoid crowds; setting up a "check-in" system with the Student before she started; and placing her in small classes for some academics. The consensus of the Team was that the Adams Memorial Middle School was the only placement available for the Student. (Parent, Collyer, Delmolino)

12. On December 14, 2001, the School proposed an IEP calling for the Student's placement in a regular middle school program with a daily 45 minute period of academic support to address the Student's written language needs. Although the IEP designates Conte as the middle school, the Parties agreed at the hearing that all Team members understood the IEP to propose a placement at the Adams Memorial Middle School. (P-5, S-2) The IEP provides no services to address the Student's emotional/psychological needs. The IEP does not indicate that the Student will be assigned an individual aide. Nor does it provide for scheduling, transitioning, or safety modifications. (P-5, S-2; Collyer) Mr. Collyer testified that these details were to be worked out between the family and the Adams Memorial Middle school staff. The parent testified that she was unable to convince the Student to even visit Adams. She rejected the proposed IEP on December 19, 2001. (Collyer; Parent; S-2, P-5)

13. Don Delmolino, the school adjustment counselor at Adams Memorial Middle School for thirty-three years, testified that Adams has approximately 420 students in grades 6, 7 and 8. The seventh grade moves between classes on

one floor, and eats lunch all together in the cafeteria. Typically academic classes range in size from 20-24 students. Special education support classes have a 4 or 5 student to one teacher ratio. Students physically change classroom teachers and class groups every 45 minutes or so. There are three school adjustment counselors and three special education teachers on staff. There is no regular or scheduled therapeutic input available for the Student, but she would be free to contact any counselor or teacher or nurse if she felt it necessary. The School has a paging system to summon help for the Student. "Help" would be the police or the crisis team. Mr. Delmolino testified that Adams Memorial could provide the Student with an inclusion program that would meet her educational " and possibly" her psychological needs. (Delmolino)

14. Mr. Collyer testified that he agreed with the recommendations for small school and class size for the Student. His first choice placements for the Student were all quite small: CTP (27 students); Poet Seat (12 students); Clarksburg (17 students); Florida (14-17 students). He characterized the Adams Memorial School as a large middle school similar to Conte. He stated that although Adams Memorial was a large environment it could work for the Student with appropriate modifications such as scheduling to avoid crowded transitions, an individual aide, etc. He admitted that the IEP document itself does not contain any of the modifications suggested by the Team, and that Adams Memorial without modifications would not be the kind of therapeutic or nurturing environment the Student needed.

15. John Merselis, Head of the Upper School and Director of Admissions at the Pine Cobble School, described the program there. Pine Cobble is an independent private school serving 149 students in preschool through 9th grade. It is not a Massachusetts approved special education school. Although some of the teachers hold state certificates in special education, and some of the students have IEP's developed by their resident school district, Pine Cobble does not hold itself out as providing special education to any student.

Mr. Merselis testified that Pine Cobble is a small, supportive, nurturing, environment in which the students receive constant adult supervision and guidance. Each student gets individual attention from at least one teacher. All academic instruction is broken down into small, accomplishable, "check-offable" tasks. Academic groupings are heterogeneous Assignments and instructional techniques are modified for each student. There are no psychologists or adjustment counselors on staff.

The 7th grade has 16 students. All take English, U.S. History, Earth Science, Pre-Algebra, Foreign Language, and Study Skills. All students and staff eat lunch together at multi-age assigned tables with adult supervision. Sports is held after school, and participation is mandatory. Pine Cobble

emphasizes growth in all aspects of the child: academic, physical, social, artistic, and ethical.

The Student visited Pine Cobble twice in December, 2001, before being considered for admission. She was admitted "diagnostically" to ensure that Pine Cobble could meet her needs. Her teachers report that though the Student has significant academic "gaps" she is an enthusiastic participant in school activities, keeps up with academic demands and fits in socially. There have been no behavioral incidents since she began school in February, 2002.

The Student follows a modified 7th grade academic program. Instead of a foreign language the Student receives daily academic support with two other students from a teacher with special education credentials. To accommodate the Student's dysgraphia the Student is permitted extra time and oral responses on tests, the use of word processing and alpha smart programs, and modified assignments, e.g.. she was allowed to act in a play instead of being required to write a script. No specific modifications have been made to accommodate the Student's bipolar illness. Mr. Merselis believes the supportive environment and significant teacher involvement at Pine Cobble keep symptoms in check.

Mr. Merselis pointed out that the Student still has significant academic weaknesses due to her learning disability and limited school attendance in the last year. He recommended that she attend summer school for remedial math and reading as well as structured social activities. (Merselis; see also Parent; P-8, 9, 10)

16. Mr. Collyer testified that Pine Cobble meets the Student's current educational needs. Were Pine Cobble an approved special education program, and therefore subject to IDEA responsibilities, Mr. Collyer would approve of the Student's placement there. (Collyer)

## Findings and Conclusions

There is no dispute that this Student has special learning needs and is entitled to a free, appropriate public education pursuant to U.S.C § 1401 et seq., and M.G.L. c. 71B. The only issue is where that education may be delivered. The Parent argues that the student, because of her disability, requires a small, nurturing, educational environment in order to have access to any education. Pine Cobble is the only available school within reasonable geographic proximity

that offers the small class size and small student body recommended by all evaluators. The School, on the other hand, argues that it exhausted all available appropriate options eligible for public funding, and that Adams Memorial, while not ideal, could be appropriate for the Student. After careful consideration of all the evidence developed in this matter, and of the arguments of counsel for both parties, it is my determination that North Adams failed to offer the Student an IEP that was reasonably calculated to provide a free appropriate public education.[1] I further find that Pine Cobble School offers the Student the type of small, supportive educational environment universally recommended by the Student's evaluators and, therefore, that the Parent's unilateral placement was justified. My reasoning is set out below:

Every evaluation of this Student recommended a small, nurturing educational environment. Every treating psychiatrist stated that the Student would be unlikely to participate in her education outside of a small, supportive environment. There were no contrary recommendations or observations in the record. North Adams, through its special education director, accepted the recommendations. Mr. Collyer testified that his first priority in looking for an appropriate school for the Student was size. Only when no public school meeting the size requirement could be located did Mr. Collyer turn to a "large" school. I find, based on the unrefuted evidence in the record, that a small,

---

[1] Because the IEP at issue here was developed, and rejected, in 2001, the prior Massachusetts standard of "maximum feasible benefit" may be more applicable. Nonetheless, the parties argued the appropriateness of the school's actions and the proposed IEP according to the federal (now state) standard of "FAPE". Since I find that the proposed IEP did not mean the "lesser" FAPE standard, there is no need to engage in further analysis.

nurturing environment, was the single most critical element of an appropriate educational placement for this Student. By designating the Adams Memorial Middle School, the IEP developed by North Adams does not offer this Student the type of environment recommended by all evaluators and service providers, the Student's parent, and the special education director. The IEP is per se, therefore, inappropriate.

The IEP has other flaws. It was late. 603 (0) C.M.R 28.05. It was developed by an incomplete Team. 34 C.F.R 300.344 and 300. 552. It failed to properly reflect the Team discussion on modifications necessary to the regular program and environment at Adams Memorial to render the placement even minimally accessible to the Student. 34 C.F.R. 300.346, 347. (Parent, Collyer) It was written in advance of the Team meeting. (Collyer)

The testimony of all the witnesses at the hearing, in particular the Parent and Mr. Collyer, both of whom I found to be thoughtful and candid, demonstrated that this Student's educational needs could not be addressed in the public programs available to North Adams in the Fall and Winter 2001-2002. The designation of the Adams Memorial Middle School as the Student's educational placement was clearly made solely because it was nearby and had space available. Not one witness testified that Adams was an appropriate placement for Student, only that it could be. (Collyer, Delmolino, Parent)

On the contrary, the Pine Cobble School, though not approved as a special education site, provides the Student with exactly the type of instructional support and modifications in the type of small, nurturing environment

recommended by the Student's evaluators, service providers, and Parent. That it addresses the Student's need for safety, security, and stability is apparent in assessing her behavioral and academic response to the program. Therefore, I am persuaded that the Parent took appropriate self-help action in locating an educational environment that met the special needs of her daughter as identified by the School and other expert evaluators, and securing the Student's placement there. That Pine Cobble is not approved by the State to provide special education is not a bar to reimbursement of parental expenses associated with the Student's placement there when the action is justified and results in appropriate educational services to the Student. Matthew J. v. Massachusetts Department of Education, 4 MSER 17 (1998); Doe v. West Boylston, 4 MSER 149 (1998).

Furthermore, I note that North Adams failed to adhere to regulatory time frames in developing an IEP and providing appropriate educational services for this Student. Despite a June,2001, initial request for a special education evaluation, and significant "truancy" in the Fall 2001, no IEP was proposed until December 14, 2001. By any count, the delay in service provision far exceeds the maximum allowable 45-day period. 603 C.M.R. 28.05(1). The undisputed evidence shows that the Student received little educational benefit from the home tutoring. (Collyer, Merselis, Parent) The effects of the extended absence and the lack of appropriate instruction on the Student's existing learning disability has resulted in significant academic gaps which require prompt remediation. (Merselis)

These gaps are attributable, at least in part, to the failure of North Adams to adhere to appropriate time lines in the development of an appropriate IEP and the provision of home-based educational services. Therefore, I find that the Student is entitled to compensatory educational services to address those deficits. Murphy v. Timberlane Regional School District, 22 F.3d 1186 (1st Cir. 1994); Roland M. v. Concord School Committee, 910 F.2d 983 (1st Cir. 1990)

**ORDER**

The 2001-2002 IEP proposed by the North Adams Public Schools is not reasonably calculated to ensure that the Student receives a free, appropriate public education in the least restrictive setting. The Parent justifiably took self-help action in locating and securing an appropriate educational environment for the Student. The Pine Cobble School offers a program that is tailored to meet the unique educational needs of the Student in the type of environment recommended by all evaluators. Therefore the School shall:

1) Reimburse the Parent for all expenses associated with the Student's unilateral placement at the Pine Cobble School, during the 2001-2002 school year.

2) Arrange for an appropriate summer learning program for the Student as compensatory services for its failure to adhere to the procedural requirements of M.G.L. c. 71B and 20 U.S.C. § 1401 et seq.

3) Convene a Team meeting prior to the end of 2001-2002 school year to develop an IEP reflecting this decision; and

4) Explore with the Department of Education available mechanisms for public funding of private schools as "sole source" options.

By the Hearing Officer,

May 28, 2002
Date:

Lindsay Byrne
Lindsay Byrne, Hearing Officer

KATZ, MURPHY & GREENWALD
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
29 WENDELL AVENUE
PITTSFIELD, MASSACHUSETTS 01201-6300

THOMAS C. DOYLE
MITCHELL I. GREENWALD
DAVID W. MURPHY, JR.

DAVID C. KATZ (1964 - 1998)
SIDNEY I. KATZ (1930 - 1971)

TELEPHONE
(413) 443-5957
(413) 499-4747

FAX
(413) 445-5888

June 5, 2002

**VIA FAX NO. (413) 664-7379**
**AND FIRST CLASS MAIL**
Timothy J. Morey, Esquire
Freedman, DeRosa & Rondeau
85 Main Street
Box 746
North Adams, MA 01247

RE: Monica Miller v. North Adams Public Schools

Dear Tim:

On behalf of our client, Elizabeth Ann Miller, the prevailing party in the above-referenced matter, I hereby request immediate reimbursement of reasonable legal fees and costs associated with her prosecution of this matter through hearing in the amount of $11,253.05. Our legal fee through April 23, 2002 was $11,190.00. We also paid Franciscan Children's Hospital $63.05 on March 8, 2002 for medical records. Thus the total amount of fees and costs is $11,253.05. We enclosed photocopies of our billing statements which fully itemizes our charges at my hourly rate of $150.00.

Should you have any questions, please let me know.

Very truly yours,

KATZ, MURPHY & GREENWALD

Dave Murphy

David W. Murphy, Jr.

DWM:sz:P:\MILLER\SPED\MOREY5.LTR

cc: Ms. Elisabeth Ann Miller

EXHIBIT 2

KATZ, MURPHY & GREENWALD
A Professional Corporation
29 Wendell Avenue
Pittsfield MA 01201
Phone 413-443-5957

Ms. Elisabeth Ann Miller
25 Laurel Avenue
North Adams MA 01247

January 17, 2002

In Reference To: Monica Miller (SPED)
Invoice #34149

Professional services

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 12/11/01 | DWM | Initial conference with A. Miller and M. Rowland | 2.20<br>150.00/hr | 330.00 |
| | DWM | Draft fee agreement (no charge); prepare authorization; dictate memo to file | 0.40<br>150.00/hr | 60.00 |
| 12/17/01 | DWM | Teleconference with A. Miller | 0.20<br>150.00/hr | 30.00 |
| 12/18/01 | DWM | Teleconference with M. Rowland; teleconference with Dr. Molbert | 0.30<br>150.00/hr | 45.00 |
| 12/26/01 | DWM | Prepare letter to SPED director and check on new regulations citation | 0.20<br>150.00/hr | 30.00 |

Ms. Elisabeth Ann Miller

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 01/02/02 | DWM | File review; prepare hearing request and letters seeking records | 1.00<br>150.00/hr | 150.00 |
| | DWM | Prepare Hearing Request; letter to J. Montepare, emails to A. Miller and M. Rowland | 1.00<br>150.00/hr | 150.00 |
| 01/07/02 | DWM | Review and revise hearing request, letter to J. Montepare; letter to Franciscan Hospital; e-mail all to A. Miller | 1.00<br>150.00/hr | 150.00 |
| 01/08/02 | DWM | Teleconference with A. Miller; teleconference with A. Miller and M. Rowland; revise Hearing Request based on M. Rowland faxes | 0.50<br>150.00/hr | 75.00 |
| 01/09/02 | DWM | Teleconference with M. Rowland regarding her teleconference with J. Montepare | 0.20<br>150.00/hr | 30.00 |
| 01/14/02 | DWM | Teleconference with A. Miller regarding receipt of hearing assignment | 0.10<br>150.00/hr | 15.00 |
| | | For professional services rendered | 7.10 | $1,065.00 |

KATZ, MURPHY & GREENWALD
A Professional Corporation
29 Wendell Avenue
Pittsfield MA 01201
Phone 413-443-5957

Ms. Elisabeth Ann Miller
25 Laurel Avenue
North Adams MA 01247

February 18, 2002

In Reference To: Monica Miller (SPED)
Invoice #34240

Professional services

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 01/18/02 | DWM | Teleconference with A. Miller; teleconference with P. O'Brien | 0.30<br>150.00/hr | 45.00 |
| | DWM | Legal research issue of prerequisites to seeking reimbursement for tuition for private placement pending hearing | 0.50<br>150.00/hr | 75.00 |
| 01/19/02 | DWM | Legal research teleconference with Mary Rowland; teleconference with A. Miller; prepare letter to J. Montepare and fax (reduced 3.0 to 1.0) | 1.00<br>150.00/hr | 150.00 |

| Date | Atty | Description | Hrs/Rate | Amount |
|---|---|---|---|---|
| 01/22/02 | DWM | Teleconference with Attorney T. Morey; prepare e-mail to A. Miller | 0.30 150.00/hr | 45.00 |
| 01/23/02 | DWM | Letter to Attorney T. Morey | 0.20 150.00/hr | 30.00 |
| 01/24/02 | DWM | Teleconference with P. O'Brien at BSEA; e-mail to A. Miller and M. Rowland | 0.20 150.00/hr | 30.00 |
| 01/25/02 | DWM | Teleconference with Attorney T. Morey; e-mail to A. Miller and M. Rowland | 0.40 150.00/hr | 60.00 |
| | DWM | Teleconference with Dr. Molbert's voicemail; prepare e-mail to A. Miller | 0.20 150.00/hr | 30.00 |
| 01/28/02 | DWM | Teleconference with Dr. Molbert; teleconference with A. Miller; letter to Dr. Howland | 0.40 150.00/hr | 60.00 |
| 01/29/02 | DWM | Teleconference with Attorney T. Morey; e-mail to A. Miller and M. Rowland regarding meeting | 0.40 150.00/hr | 60.00 |
| | DWM | Letter to A. Miller | 0.20 150.00/hr | 30.00 |
| 01/30/02 | DWM | Teleconference with Attorney T. Morey | 0.20 150.00/hr | 30.00 |

| Date | Atty | Description | Hrs/Rate | Amount |
|---|---|---|---|---|
| 02/01/02 | DWM | Teleconference with M. Rowland | 0.30<br>150.00/hr | 45.00 |
| 02/04/02 | DWM | File review; prepare for client conference; conference with M. Rowland and A. Miller | 2.30<br>150.00/hr | 345.00 |
| 02/06/02 | DWM | Teleconference with Dr. Molbert; teleconference with Attorney T. Morey's office | 0.30<br>150.00/hr | 45.00 |
| | DWM | Teleconference with A. Miller's office | 150.00/hr | NO CHARGE |
| | DWM | Teleconference with A. Miller | 0.20<br>150.00/hr | 30.00 |
| 02/07/02 | DWM | Review/Revise letter to T. Morey | 0.10<br>150.00/hr | 15.00 |
| 02/08/02 | DWM | Teleconference with Dr. Molbert regarding teleconference planned for today; prepare fax to Dr. Molbert | 0.30<br>150.00/hr | 45.00 |
| | DWM | Conference with A. Miller; M. Rowland; teleconference with T. Morey and other school department representatives and Dr. B. Molbert | 1.20<br>150.00/hr | 180.00 |

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 02/13/02 | DWM | Teleconference with Pine Cobble; left voice mail message for N. Edgerton | 150.00/hr | NO CHARGE |
| 02/15/02 | DWM | Prepare email to A. Miller in reply to hers of today | 0.40<br>150.00/hr | 60.00 |
| | | For professional services rendered | 9.40 | $1,410.00 |

KATZ, MURPHY & GREENWALD
A Professional Corporation
29 Wendell Avenue
Pittsfield MA 01201
Phone 413-443-5957

Ms. Elisabeth Ann Miller
25 Laurel Avenue
North Adams MA 01247

March 23, 2002

In Reference To: Monica Miller (SPED)
Invoice #34310

Professional services

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 02/19/02 | DWM | Lengthy teleconference with T. Morey | 0.40<br>150.00/hr | 60.00 |
| | DWM | Teleconference with N. Edgerton; e-mail to A. Miller | 0.30<br>150.00/hr | 45.00 |
| 02/20/02 | DWM | Teleconference with Pat Davis at BSEA and Attorney T. Morey regarding sole source approval of non-DCE approved program | 0.50<br>150.00/hr | 75.00 |
| 02/26/02 | DWM | Conference with A. Miller and M. Rowland | 0.70<br>150.00/hr | 105.00 |
| | DWM | Prepare for pre-trial conference | 2.00<br>150.00/hr | 300.00 |

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 02/27/02 | DWM | Prepare for pre-hearing conference; travel to/from conference in Springfield, attend conference | 6.00<br>150.00/hr | 900.00 |
| 02/28/02 | DWM | Receive/Review fax with statistics on Adams Memorial Middle School and Pine Cobble | 0.20<br>150.00/hr | 30.00 |
| 03/04/02 | DWM | Prepare e-mail to A. Miller regarding medical records | 0.30<br>150.00/hr | 45.00 |
| 03/06/02 | DWM | Prepare for conference call; teleconference with T. Morey and L. Byrne (hearing officer); second negotiation with T. Morey | 1.30<br>150.00/hr | 195.00 |
| | DWM | Teleconference with E. Miller to discuss settlement offer | 0.20<br>150.00/hr | 30.00 |
| 03/07/02 | DWM | Teleconference with M. Rowland regarding tentative offer | 0.20<br>150.00/hr | 30.00 |
| 03/12/02 | DWM | Teleconference with Dr. Howland | 0.20<br>150.00/hr | 30.00 |
| 03/15/02 | DWM | Prepare e-mail to M. Rowland and letter to T. Morey | 0.20<br>150.00/hr | 30.00 |

Ms. Elisabeth Ann Miller 

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 03/19/02 DWM | Teleconference with T. Morey | 0.30<br>150.00/hr | 45.00 |
| 03/21/02 DWM | Teleconference with M. Rowland | 0.60<br>150.00/hr | 90.00 |
| | For professional services rendered | 13.40 | $2,010.00 |

KATZ, MURPHY & GREENWALD
A Professional Corporation
29 Wendell Avenue
Pittsfield MA 01201
Phone 413-443-5957

Ms. Elisabeth Ann Miller
25 Laurel Avenue
North Adams MA 01247

April 19, 2002

In Reference To: Monica Miller (SPED)
Invoice #34398

Professional services

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 03/25/02 DWM | Conference with M. Rowland and A. Miller to discuss trial strategy | 1.00<br>150.00/hr | 150.00 |
| 03/27/02 DWM | Conference call to L. Byrne and T. Morey | 0.30<br>150.00/hr | 45.00 |
| 03/28/02 DWM | Email to A. Miller and M. Rowland | 0.30<br>150.00/hr | 45.00 |
| 03/29/02 DWM | Prepare for hearing and legal research | 2.00<br>150.00/hr | 300.00 |
| 03/30/02 DWM | Prepare for hearing | 1.00<br>150.00/hr | 150.00 |

| Date | Atty | Description | Hrs/Rate | Amount |
|---|---|---|---|---|
| 04/01/02 | DWM | Prepare witness list; telephone conferences with Pine Cobble School, Dr. Stores, J. Barry, Clarksburg Superintendant, and M. Rowland; prepare for hearing | 2.50<br>150.00/hr | 375.00 |
| 04/02/02 | DWM | Preparation for hearing; finish witness list and Exhibit submission; teleconferences with T. Morey; Dr. Howland (2); E. Miller; M. Rowland and J. Merselis all in preparation for hearing and exhibits; prepare witness testimony notes | 5.00<br>150.00/hr | 750.00 |
| 04/03/02 | DWM | Review Franciscan records; prepare A. Miller for her testimony | 3.30<br>150.00/hr | 495.00 |
| | DWM | Prepare outline of A. Miller's testimony | 2.10<br>150.00/hr | 315.00 |
| 04/04/02 | DWM | Prepare Subpoena and letter to Dr. Howland | 0.80<br>150.00/hr | 120.00 |
| 04/05/02 | DWM | Travel to Pine Cobble School and confer with Jay Merselis in preparation for hearing; prepare outline and fax; fax subpoenas to J. Merselis and T. Morey | 3.50<br>150.00/hr | 525.00 |

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 04/08/02 | DWM | Prepare for hearing; teleconference with J. Merselis | 2.00<br>150.00/hr | 300.00 |
| | DWM | Prepare for hearing | 4.00<br>150.00/hr | 600.00 |
| 04/10/02 | DWM | Attend hearing in Springfield, day-1, including travel and preparation | 8.50<br>150.00/hr | 1,275.00 |
| 04/11/02 | DWM | Attend special ed. hearing in Springfield, including travel, day 2 | 7.50<br>150.00/hr | 1,125.00 |
| 04/12/02 | DWM | Teleconferences with M. Rowland, A. Miller, and T. Morey | 0.40<br>150.00/hr | 60.00 |
| 04/19/02 | DWM | Teleconference with A. Miller | 0.10<br>150.00/hr | 15.00 |
| | | For professional services rendered | 44.30 | $6,645.00 |

Additional charges:

| | | |
|---|---|---|
| 03/08/02 | Franciscan Childrens Hospital | 63.05 |
| | Total costs | $63.05 |
| | Total amount of this bill | $6,708.05 |

KATZ, MURPHY & GREENWALD
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
29 WENDELL AVENUE
PITTSFIELD, MASSACHUSETTS 01201-6300

THOMAS C. DOYLE
MITCHELL I. GREENWALD
DAVID W. MURPHY, JR.

DAVID C. KATZ (1964 - 1998)
SIDNEY I. KATZ (1930 - 1971)

TELEPHONE
(413) 443-5957
(413) 499-4747

FAX
(413) 445-5888

June 18, 2002

**VIA FAX NO. (413) 664-7379**
Timothy J. Morey, Esquire
Freedman, DeRosa & Rondeau
85 Main Street
Box 746
North Adams, MA 01247

RE: Monica Miller v. North Adams Public Schools

Dear Tim:

As attorney for the prevailing party in this case, I wrote to you on June 6, 2002, requesting immediate reimbursement of legal fees and costs of $11,253.05 (since then my fee has increased by $150 to $11,403.05 because I have spent additional time). I construe the City's failure to timely agree to pay the bill as a refusal to pay. Therefore, I intend to file suit against the City in the U.S. District Court in Springfield seeking an award of fees and costs. As you know, if we prevail in that action, as we should, the City will be held liable for all fees associated with its prosecution in addition to the fees incurred by my client in the special education appeal. This week, I will begin to prepare the papers for the suit unless the City immediately agrees in writing to the following: (1) pay the full bill plus additional fees incurred until the matter is concluded and (2) an acceptable date certain by which the bill will be paid.

Very truly yours,

KATZ, MURPHY & GREENWALD

David W. Murphy, Jr.

DWM:sz:P:\MILLER-SPED\MOREY7.LTR
cc: Ms. Elisabeth Ann Miller

EXHIBIT 3

**KATZ, MURPHY & GREENWALD**
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
29 WENDELL AVENUE
PITTSFIELD, MASSACHUSETTS 01201-6300

THOMAS C. DOYLE
MITCHELL I. GREENWALD
DAVID W. MURPHY, JR.

DAVID C. KATZ (1964 - 1998)
SIDNEY I. KATZ (1930 - 1971)

TELEPHONE
(413) 443-5957
(413) 499-4747

FAX
(413) 445-5888

June 27, 2002

**VIA FAX NO. (413) 664-7379**
Timothy J. Morey, Esquire
Freedman, DeRosa & Rondeau
85 Main Street
Box 746
North Adams, MA 01247

RE: Monica Miller v. North Adams Public Schools

Dear Tim:

I fax herewith, a copy of the complaint I intend to file in the U.S. District Court as early as tomorrow afternoon unless before then I reach agreement with North Adams as to: (1) its willingness to pay my bill; (2) the exact amount it will pay, including recent fees incurred to prepare this complaint; and (3) a date certain for payment.

Very truly yours,

KATZ, MURPHY & GREENWALD

David W. Murphy, Jr.

DWM:sz:P:\MILLER\SPED\MOREY8.LTR

cc: Ms. Elisabeth Ann Miller

**EXHIBIT 4**

KATZ, MURPHY & GREENWALD
A Professional Corporation
29 Wendell Avenue
Pittsfield MA 01201
Phone 413-443-5957

Ms. Elisabeth Ann Miller
25 Laurel Avenue
North Adams MA 01247

June 19, 2002

In Reference To: Monica Miller (SPED)
Invoice #34590

Professional services

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 06/05/02 | DWM | Prepare email to A Miller answering questions posed; prepare two letters to T. Morey regarding payment of fees and requesting team meeting | 0.50<br>150.00/hr | 75.00 |
| 06/06/02 | DWM | Lengthy teleconference with T. Morey regarding post-hearing status | 0.50<br>150.00/hr | 75.00 |
| 06/18/02 | DWM | Teleconference with T. Morey and prepare letter to him concerning outstanding bill for legal services | 1.00<br>150.00/hr | 150.00 |
| | | For professional services rendered | 2.00 | $300.00 |

Exhibit 5

KATZ, MURPHY & GREENWALD
A Professional Corporation
29 Wendell Avenue
Pittsfield MA 01201
Phone 413-443-5957

Ms. Elisabeth Ann Miller
25 Laurel Avenue
North Adams MA 01247

July 1, 2002

In Reference To: Monica Miller (SPED)
Invoice #34629

Professional services

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 06/26/02 | DWM | Teleconference with Atty T. Morey regarding federal lawsuit | 0.20<br>150.00/hr | 30.00 |
| 06/27/02 | DWM | Prepare complaint for fees and costs for filing in U.S. District Court with cover letter to Atty . T. Morey; teleconference with Clerk's office of the Court regarding Summonses and Civil Action Cover Sheet as well as other filing requirements | 2.00<br>150.00/hr | 300.00 |
| 06/28/02 | DWM | Teleconference with Atty. T. Morey | 0.10<br>150.00/hr | 15.00 |
| | | For professional services rendered | 2.30 | $345.00 |